## Thomas P. Pingree *versus* Anson L. Comstock *et al.*

Where an assignment was made by an insolvent debtor to a creditor, in trust for the benefit of the assignee and such other creditors as should execute the same within a certain time, and the assignee accepted the trust, and a portion of the creditors became parties to the assignment, it was *held*, that those creditors who had executed the assignment, were not authorized to annul it and attach the property, before the expiration of such time, without the consent of the other creditors, although the debtor had withheld the evidences of debts due to him, and had refused to deliver to the assignee, and fraudulently wasted, a part of the property assigned ; that the assignee was bound to allow all the creditors to become parties to the indenture, within the time limited ; that a creditor whom the assignee had, within such time, refused to permit to execute the assignment, might enforce the execution of the trust or recover an equitable compensation ; and that the assignee was bound to account, not only for the property which he had received, but for such as might have been recovered by him from the debtor by the use of due diligence.

An assignment by an insolvent debtor of " all his lands, tenements and hereditaments," was *held* sufficient to pass all his real estate, without a more particular description.

THIS was a bill in equity, setting forth, that on August 22d, 1832, Francis Wiley, one of the defendants, by his promissory note of that date, promised to pay to the plaintiff or his order the sum of $1625, in nine months ; that on May 18th, 1833, prior to the maturity of the note, an indenture was executed by and between Wiley, of the first part, Anson L. Comstock and Samuel Raymond, two of the defendants, of the second part, and the other defendants, of the third part, whereby Wiley assigned to Comstock and Raymond a large amount of real and personal estate, in trust, among other things, to apply the proceeds thereof, after paying certain expenses and the claims of Comstock and Raymond, and of Robert Stimpson and John Adden, junior, two others of the defendants, in full, to the payment of all others of the creditors of Wiley who should become parties to and execute the indenture within twenty days from its date, or within ten days after they should have seen the indenture and had an offer or permission to become parties thereto ; that the plaintiff was one of the creditors of Wiley named in the indenture ; that the note to the plaintiff had since become due, and was wholly unpaid ; that Wiley had become insolvent and unable to pay any part thereof ; that the trust and convey

ance were accepted by Comstock and Raymond, and that by virtue of the assignment they received real and personal estate, of a value greatly exceeding all the expenses and the claims of the preferred creditors, and greatly exceeding the amount due to the plaintiff and all the creditors of Wiley who executed the indenture ; that Comstock and Raymond, on May 20th, 1833, gave notice in writing to the plaintiff, of the indenture and of their acceptance of the trust, and requested him to become party thereto ; that the plaintiff, on the 22d, demanded of them permission to execute the indenture ; but that they, combining with the other defendants, refused to execute the trust, and having caused a part of the real and personal estate to be attached by virtue of certain writs of attachment in favor of themselves and of others of the defendants, which processes were pending, and under which the property was pretended to be held, reconveyed and delivered the residue of the property, real and personal, to Wiley for his own use ; and that they refused to permit the plaintiff to become party to the indenture, or to avail himself in any manner of its provisions in his behalf. To the end, therefore, that Wiley might be enjoined from collecting any choses in action in the indenture set forth, that a receiver might be appointed, that Comstock and Raymond, and their confederates, might be enjoined from proceeding at law under the attachments of the property conveyed by the indenture, and that Comstock and Raymond might stand charged with the trusts set forth in the indenture and permit the plaintiff to become party thereto, the bill prayed that a writ might issue, &c.

The answer set forth, that the provisions declared in the indenture, were accepted by Comstock and Raymond ; that the property pretended to be conveyed to them by the indenture, as afterwards appeared, was of the value of $ 1948 ; that the claims of the preferred creditors, all of whom had executed the indenture, amounted to $ 1492·49 ; that the claims of the plaintiff and the other creditors of Wiley, intended to be discharged by the indenture, amounted to $ 4266·83, so that if the whole of the real and personal estate, intended to be conveyed thereby, had come into the hands of the assignees, there would have been but a very small sum, to wit, $ 455·51, sub-

ject to the expenses of the execution of the trusts, to be dis tributed among such creditors ; that of the personal property so assigned, a part only, amounting to $ 1520, came into the hands of the assignees ; that the indenture was wholly inoperative to pass the real estate, by reason of the uncertainty of the description thereof ; that livery of seisin thereof was never made to the assignees ; that a portion also of the personal property assigned was never delivered to them or came under their control ; that some of the defendants were informed and believed, that Wiley, without their knowledge, had paid to certain creditors of his, who were not preferred in the indenture, the whole amount of their claims, in order to induce them to execute the assignment ; that the indenture purported to convey to Comstock and Raymond all Wiley's choses in action, yet that he had, without the knowledge or consent of Comstock and Raymond and his other creditors, retained in his own hands the evidences of several large debts due to him, with intent to appropriate the same to his own use , that the defendants were advised and verily believed, that the indenture was, in consequence thereof, fraudulent and wholly ineffectual to vest a legal title to the real and personal estate thereby intended to be conveyed, in Comstock and Raymond as trustees ; that by reason thereof the indenture and the release therein contained, were utterly null and void to all intents and purposes, and the same was, with the consent of all the parties thereto, revoked and annulled, and possession of the property relinquished by Comstock and Raymond, on May 22d, 1833 ; that thereupon Comstock, Raymond, Stimpson, Adden, and Ashbel Waite, another creditor, who was also a party to the indenture, caused the stock in trade of Wiley, and other of the assigned property, to be attached, and having recovered judgments on their several writs against him, received the proceeds of such property on their executions ; and Comstock and Raymond admit, that the plaintiff was entitled to execute the indenture and that they requested him to do so, but they deny that they ever refused to permit him to execute it until after the revocation thereof and the plaintiff's knowledge of the same ; and they further deny, that they ever came into possession of more property than would have been sufficient to

pay the claims of the preferred creditors and the expenses of executing the trusts, if the same had been carried into effect.

By the assignment, Wiley gave, granted, sold and conveyed to the trustees, "all his lands, tenements and hereditaments," but without setting forth any particular description thereof.

*C. P. Curtis* and *Bartlett*, for the plaintiff, to the point, that it was not in the power of the parties to the indenture to cancel it and attach the property assigned, for their own benefi:, without the consent of the plaintiff, even if the person creatmg the trust assented thereto, cited *Messonier* v. *Kauman*, 3 Johns. Ch. R. 3 ; *Ward* v. *Lewis*, 4 Pick.. 518, and cases cited ; *New Eng. Bank* v. *Lewis*, 8 Pick. 113 ; *Shepherd* v. *M'Evers*, 4 Johns. Ch. R. 136 ; to the point, that the rule adopted in this State, requiring the creditors to become parties to the trust by executing the assignment, is applicable only in the case of adverse attaching creditors, *Cumberland* v. *Coddington*, 3 Johns. Ch. R. 261 ; *New Eng. Bank* v. *Lewis*, 8 Pick. 113 ; and to the point, that the description of the real estate in the indenture was sufficient to pass all the debtor's real estate to the assignees, 4 Cruise, *tit. Deed, c.* 3, § 26 to 36.

*C. G. Lormg* and *Edw. G. Loring*, for the defendants. As the trustees were to be paid in full under the assignment, there seems to be no ground for charging them with fraud in cancelling the assignment.

The real estate did not pass by the assignment, the description being too general. It does not appear, whether the land s in this State, or elsewhere. *Ingell* v. *Nooney*, 2 Pick. 362.

We admit that a trustee cannot affect the vested rights of the cestui que trust, without his consent ; but we deny that the plaintiff was a cestui que trust. By the law of England and New York, the express assent of the creditor to the assignment is not required in order to give him a vested right ; but in this State, his assent is not to be presumed ; *Russell* v. *Woodward*, 10 Pick. 408 ; and therefore the cases in England and New York are inapplicable here. Before the creditor assents he can *attach* ; and that is conclusive of the question. Before he assents, he has not given the consideration on which his righ' under the assignment is to vest ; he has not complied

Pingree
*v.*
Comstock.

Maich 19th
1835

Pingree
v.
Comstock.

with the condition of the trust. If the plaintiff, therefore, had no vested interest under the assignment, no other non-assenting creditor had ; and the assignor and the assignees held the whole legal and equitable title. Then the question is, whether a deed cannot, in equity as well as at law, be cancelled with the assent of all parties interested. Suppose an assignment to be made, and none of the creditors give their assent to it, cannot the debtor dispose of the property assigned, or must it remain liable to attachment ? If the assignment was annulled, there is an end to the plaintiff's case. The notice from the assignees gave him no vested interest, for he could still attach ; and the bill could give him none, for the trust had ceased to exist.

If the plaintiff is not a party to the contract, he cannot claim a specific performance of it. And further, if he has the power to compel the defendants to let him come into the assignment, they should have the power to compel him to come in. As there is no such mutuality between the parties, the plaintiff cannot enforce a specific performance. *Scott* v. *Porcher*, 3 Meriv. 652 ; *Wallwyn* v. *Coots*, 3 Meriv. 707.

*April 5th,*
1836.

WILDE J. delivered the opinion of the Court. The first and principal question raised by these facts is, whether the two defendants, Comstock and Raymond, the trustees named in the indenture, are bound by the trusts they undertook to perform, so that they can be enforced against them by the plaintiff. And it is the opinion of the Court, that they are so bound. It is expressly provided as one of the trusts, that all the creditors may come in and become parties to the indenture, and it is admitted, that the plaintiff was entitled to execute the indenture, and that he was requested by the trustee so to do. It is averred in the bill and admitted in the answer, that the plaintiff applied to the trustees within the time limited, and requested them to allow him to execute the indenture, and that the trustees refused to permit him so to do ; but the trustees deny that this refusal was prior to the cancelling of the indenture, as set forth in the answer. But this fact is immaterial, unless for the reasons set forth in the answer the defendants had a right to cancel the indenture. If this right cannot be maintained, we think it very clear that the trustees were bound to perform the trusts according to the terms of the indenture, and that the

plaintiff has a right to enforce the performance of them, or to recover an equitable compensation. This right is fully maintained by the cases of *Ward* v. *Lewis*, 4 Pick. 518, and *New England Bank* y. *Lewis*, 8 Pick. 113. In both of these cases it was held, that where a trust is created for the benefit of third persons, even without their knowledge, they may, if they choose, affirm the trust and enforce its execution. And these decisions are in conformity to well established principles of equity, and the current of the authorities on the subject of trusts.

The trustees in this case were, therefore, bound to allow all the creditors to come in and become parties to the indenture, and their refusal to allow the plaintiff so to do, was clearly a breach of trust, for which they are responsible, unless, as before remarked, they had a right to cancel the trust deed. Several grounds are relied on by which the defendants attempt to justify this act.

It has been urged, that the parties who had executed the indenture had a right to rescind it without consulting the other creditors. But in a court of equity there is no distinction between the creditors who had become parties to the indenture, and those who were entitled to become parties. All were interested in the trust, and it could not be rightfully defeated without the consent of all the creditors who were disposed to come in and claim the benefit of the trust fund. To decide otherwise, would open a door for fraudulent preferences, and other schemes and shifts, by which honest creditors might be wronged, without any remedy either at law or in equity. It is to be regretted that an insolvent debtor has the power to make any preferences. It is a power which may be grossly abused, and ought not to be extended or encouraged.

It is averred in the answer, that the assignment was null and void by reason of the fraudulent misconduct of Wiley, the insolvent debtor ; that he had withheld the evidences of debts due to him, had refused to deliver to the trustees a part of the property assigned, and had fraudulently wasted the trust fund, by paying some of the creditors in full, who, by the terms of the trust, were not to be paid until after the preferred creditors. These fraudulent practices, it is contended, authorized the de-

Pingree
*v.*
Comstock.

fendants to set aside and annul the trust, and to secure their demands by attachments. · But this, we think, they were not authorized to do without the consent of the other creditors interested in the trust. It was the duty of the trustees to enforce the trust by all the means in their power, instead of securing their own demands to the prejudice of the other creditors.

The trustees, therefore, must be held responsible for all damages caused by this breach of trust, and must account not only for all the property assigned which came to their hands, but for that also which might have been obtained from the fraudulent debtor. They must account also for the real estate which passed by the assignment. The objection, that there is no particular description of the lands granted, cannot be maintained. The debtor gives, grants, sells and conveys to the trustees, all his lands, tenements and hereditaments. The intention of the parties, therefore, that all the real estate should pass, is manifest, and a particular description of the lands conveyed is not required.

Upon these principles, the case is to be referred to a master, to ascertain the amount of the trust fund, including not only that part which is admitted to have been received by the trustees, but the residue so far as it might have been reduced to possession by the use of due diligence on the part of the trustees ; and to ascertain also what other creditors, if any, have assented to the trust, and the amount of all the claims on the trust fund, and to state an account.